**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **EDWIN BERRY MARTIN,** | ] |
| Plaintiff(s), | ] |
| vs. | ] CV 94-N-2928-S |
| **NORFOLK SOUTHERN RAILWAY COMPANY, et al.,** | ] |
| Defendant(s). | ] |

FILED SEP 3 0 1997 U.S. DISTRICT COURT NORTHERN DISTRICT OF ALABAMA

ENTERED SEP 30 1997

**Memorandum of Opinion**

### I. Introduction.

Edwin Berry Martin brought this action against Norfolk Southern Railway Company ("Norfolk Southern"), and Preston Lee Thomasson, Robert F. Summerlin, and Larry D. Hornbuckle, individually, for injuries allegedly sustained as the result of a claimed course of sexual harassment which occurred while he was employed at Norfolk Southern's Norris Yard in Birmingham, Alabama. Martin asserted claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51, *et seq.*, and Alabama state law. Specifically, he claimed that the defendants subjected him to a hostile work environment based on sexual harassment. He also alleged state law claims of outrage, invasion of privacy, and assault and battery against all defendants and a FELA claim against Norfolk Southern.

Prior to the jury trial in this action, the court dismissed all claims except for Martin's assault and battery and invasion of privacy claims against defendants Thomasson,

Summerlin, and Hornbuckle, respectively,[1] and the FELA claim against Norfolk Southern. On June 13, 1996, the jury rendered verdicts in favor of defendants Thomasson and Hornbuckle on the assault and battery claims, and against them on the invasion of privacy claims. It awarded no compensatory damages, but found that Martin was entitled to an award of punitive damages from Hornbuckle in the amount of $2,500, and an award of punitive damages from Thomasson in the amount of $100. The jury also found that Norfolk Southern was negligent under FELA, and that Martin's own negligence was responsible for 25% of his injuries. It assessed the plaintiff's total damages on the FELA claim at $500,000.

The court presently has for consideration two motions filed by Norfolk Southern: (1) a renewed motion for judgment as a matter of law, or, in the alternative, motion for partial judgment as a matter of law on plaintiff's claim of economic damages, filed at the conclusion of the evidence; and (2) a motion for mistrial, filed after the jury verdicts. The issues have been briefed and the motions are ripe for decision. Upon due consideration, the motions will be denied.

## II.   Factual Background Leading to These Motions.

On November 17, 1993, Edwin Berry Martin, ("Martin" or the "plaintiff"), was transferred from South Carolina to Norfolk Southern's Norris Yard in Birmingham, Alabama. At the time of his transfer he held the position of Mechanical Supervisor. In Birmingham, he worked in the diesel shop two nights a week on the third shift and three days a week

---

[1] Claims against defendant Summerlin were dismissed at the close of the plaintiff's evidence.

on the second shift. Larry D. Hornbuckle, a general foreman, was Martin's immediate supervisor on the third shift. In addition, Martin worked with Hornbuckle for an hour during shift change on the three days of the week that he worked second shift. Preston Lee Thomasson worked under Martin's supervision on the third shift two nights a week. Robert F. Summerlin was a mechanical supervisor on the third shift. Summerlin and Martin worked together during shift change three days per week.

During the time they worked together, Martin claimed that the defendants engaged in a course of sexual harassment and tortious conduct against him. Specifically, Martin alleged and presented testimony at trial that the following events took place:

(1) Hornbuckle and Summerlin offered to expose their penises to him;
(2) Hornbuckle and Summerlin asked him to show them his penis;
(3) Hornbuckle grabbed at and pinched him in and around his legs and posterior;
(4) Hornbuckle grabbed at or swatted towards his genitals;
(5) Hornbuckle made improper and inappropriate remarks about his girlfriend;
(6) Hornbuckle and Summerlin told him that he looked like he had AIDS;
(7) Hornbuckle called him and two other employees the "Three Muskequeers;"
(8) Hornbuckle told him that he was "pretty;"
(9) Hornbuckle told him that he would like to bend him over a chair and have sex with him;
(10) Hornbuckle wrapped a piece of computer paper around his head and fashioned it as a scarf;
(11) Hornbuckle threatened him that he would run him off the property if he did not "go along with him and his boys." He was referring to himself, Thomasson, and Summerlin;
(12) Thomasson grabbed at him on several occasions;
(13) Thomasson put him in a headlock on occasion;
(14) Thomasson tried to kiss him;
(15) Thomasson pinched him on occasion;
(16) Thomasson told him that he was "cute;"
(17) Thomasson stated that his girlfriend was ugly;
(18) Thomasson bent him over while Hornbuckle attempted to stick a broom handle into his anus. All three persons were fully clothed;
(19) Summerlin grabbed at him on several occasions;

3

    (20)    Summerlin asked him where he was getting his [sex] now; and

    (21)    Summerlin pulled his pants down in front of him, exposing a tattoo on his buttocks.

It was undisputed that Hornbuckle and Thomasson actually touched the plaintiff; Summerlin claimed that he only grabbed at Martin and did not touch him. It was also undisputed that all three defendants made offensive comments to the plaintiff. Martin admitted that none of the defendants propositioned him to have sex with them.

    Martin testified that during the course of the harassment he spoke with Hornbuckle on a number of occasions about stopping the harassment to no avail. He also testified that on four or five occasions he spoke with Mr. Benson, who was second in authority to the Master Mechanic, about ending the harassment. He also requested help from Mr. Loughner, the second shift supervisor. However, neither Benson nor Loughner made any effort to stop the offensive conduct. Martin did not contact the company's Equal Employment Opportunity Department or notify the Master Mechanic. He also did not attempt to utilize the company's sexual harassment policy. Norfolk Southern argued the plaintiff received specific training and literature regarding the harassment policy; Martin claimed he was merely aware of the existence of the policy, not the specifics.

    On April 4, 1994, Norfolk Southern received a copy of the charge of discrimination the plaintiff had filed with the Equal Employment Opportunity Commission ("EEOC"). On April 7, 1994, S. B. Stutsman, manager of Norfolk Southern's Equal Employment Opportunity Department, came to Birmingham and interviewed Martin, Hornbuckle, Summerlin, Thomasson, and various other persons in the Mechanical Department at Norris Yard concerning Martin's allegations. Stutsman was assisted by Bennett, the Master Mechanic

of the diesel department at Norris Yard. As a result of the initial investigation, Norfolk Southern suspended Hornbuckle, Thomasson and Summerlin from their employment on the grounds of conduct unbecoming an employee. After a formal hearing, Hearing Officer L. C. Smith upheld each of the charges leveled against them and all three were terminated.

Martin also claimed that Norfolk Southern mishandled his EEOC charge. The EEOC erroneously sent the charge to the Transportation Department, rather than the Mechanical Department, where it was allowed to be opened and read. Martin testified that because his complaint became public knowledge, he experienced hostility from other Norfolk Southern employees on the third shift at the diesel shop at Norris yard. Due to this hostility, he was allowed to begin working the first shift. Martin then chose to take a medical leave of absence. During his medical leave, he and his new wife moved back to South Carolina. Norfolk Southern informed Martin that upon the expiration of his six month leave period, he was to report to work in Birmingham if he had not been placed on long term disability. When his leave expired, he chose not to return to work and was discharged in accord with company policy.

## III. Renewed Motion for Judgment as a Matter of Law.

### A. Standard for Rule 50 Motion for Judgment as a Matter of Law.

In deciding Norfolk Southern's motion for judgment as a matter of law, the court must consider all the evidence, including that which favors the moving party, in the light most favorable to the nonmoving party. "If the facts and inferences point overwhelmingly in favor of one party, such that reasonable people could not arrive at a contrary verdict," then the motion must be granted. *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.

1989). A jury question is not presented on a mere scintilla of evidence. Motions for judgment as a matter of law ". . . need not be reserved for situations where there is a complete absence of facts to support a jury verdict. There must be a substantial conflict in evidence to support a jury question." *Id.*; see also *Rosenfield v. Wellington Leisure Products, Inc.*, 827 F.2d 1493, 1494-95 (11th Cir. 1987).

### B.     Discussion.

Norfolk Southern moves for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50. Norfolk Southern originally filed this motion at the conclusion of the evidence, seeking an order declaring that no legally sufficient evidentiary basis existed for a reasonable jury to find for the plaintiff against Norfolk Southern. Specifically, Norfolk Southern argues in the motion that there is no legally sufficient evidentiary basis to support a jury in finding that Norfolk Southern knew of a propensity on the part of the individual defendants to participate in the type of harassing conduct which Martin alleged, and that it failed to act on that information; that the alleged intentional conduct directed against Martin by the individual defendants was so pervasive that Norfolk Southern should have known about it, or that Martin suffered any economic loss, including lost wages or benefits, which was caused by any actionable negligence on the part of Norfolk Southern.

Norfolk Southern also seeks in this motion a declaration by the court: (1) that Martin was himself negligent because, as a supervisor, he could have stopped the individual defendants from acting as they did, but did not do so; (2) that after the first week of January 1994, the plaintiff's failure to put an end to the complained-of conduct of the individual defendants was the sole cause of his alleged injuries as a matter of law; (3) that there is no

evidence that would justify a rational jury in finding other than that Mr. Martin had the authority and responsibility to discipline individual defendant Thomasson and that his failure to do so constitutes negligence as a matter of law; (4) that no rational jury, on the evidence at trial, could have found other than that Mr. Martin had the means and authority to report the conduct of individual defendant Hornbuckle and that such failure on Martin's part was negligence as a matter of law.

As to the FELA "direct negligence" claim against Norfolk Southern, the pivotal issue before the jury was whether Norfolk Southern knew or should have known of the harassment alleged in this case. As stated in the court's instructions to the jury, under FELA, it was the continuing duty of Norfolk Southern to use reasonable care under the circumstances to furnish Martin with a reasonably safe place in which to work, and to use reasonable care under the circumstances to maintain and keep such place of work in a reasonably safe condition. *See Court's Instructions to the Jury at 5-9; see also Nivens v. St. Louis S.W. Ry.*, 425 F.2d 114 (5th Cir. 1970); *Fort Worth & D. Ry. v. Smith*, 206 F.2d 667 (5th Cir. 1953). This does not mean that Norfolk Southern was a guarantor or an insurer of Martin's safety, and the mere fact that the claimed events or conduct may have happened, standing alone, does not require the conclusion that they were the result of negligence by Norfolk Southern. *Id.* The extent of the defendant's duty is to exercise reasonable care under the circumstances to see that the place in which the work is to be performed is reasonably safe. *Id.*

Although FELA does not make a railroad the insurer of its employees' well-being, its bias in favor of the injured employee cannot be exaggerated. The "standards of

7

liability" under FELA are "significantly broader than in ordinary common-law negligence actions." *Nivens v. St. Louis Southwestern Ry. Co.*, 425 F.2d 114, 118 (5th Cir. 1970).[2] As Martin points out in his brief, only "slight negligence" is necessary to support a FELA action, a burden of proof that "obviously, is much less than the burden required to sustain recovery in ordinary negligence actions." *See Plaintiff's Brief in Compliance with Order Entered July 10, 1997* at 2 (quoting *Boeing Co. v. Shipman*, 411 F.2d 365, 371 (5th Cir. 1969) (en banc)); *see also Davis v. Hill Engineering, Inc.*, 549 F.2d 314, 329 (5th Cir. 1977).[3]

Here, the jury's conclusion must be upheld as long as it "is not outside the possibility of reason on the facts and circumstances shown." *Mullahan v. Union Pacific R.R.*, 64 F.3d 1358, 1364 (9th Cir. 1995). As the primary basis for its motion for judgment as a matter of law, Norfolk Southern asserts that no sufficient evidence existed that Norfolk Southern knew or should have known of the harassment of Martin. *See Memorandum in Support of Defendant Norfolk Southern Railway Company's Renewed Motion for Judgment as a Matter of Law* at 2-4. Although the Eleventh Circuit has yet to rule under FELA on corporate agency and liability issues in intentional misconduct cases such as this, other federal appellate courts have.[4] These courts have been very liberal in finding actual or imputed

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

[3] The causation requirement is also substantially relaxed: "Thus, an employer may be held liable under FELA for risks that would otherwise be too remote to support liability at common law." *Ulfik v. Metro-North Commuter R.R.*, 77 F.3d 54, 58 (2nd Cir. 1996)).

[4] Concerned that the issue of corporate liability may be impacted by the recent *en banc* decision of the United States Court of Appeals for the Eleventh Circuit in the case of *Faragher v. City of Boca Raton*, 111 F.3d 1530 (11th Cir. 1997), the court entered an Order on July 10, 1997, asking the parties to re-brief that issue in light of *Faragher*. *See Order of Court* (July 10, 1997) at 1. *Faragher*, however, dealt with corporate liability/agency principles in the context of Title VII, not FELA. As this court previously has recognized, Title VII harassment claims involve markedly different legal standards and analyses than the FELA claims present in the instant case.

8

knowledge in FELA cases. In *Lancaster v. Norfolk & Western Ry. Co.,* 773 F.2d 807, 820 (7th Cir. 1985), Judge Posner, writing for the Seventh Circuit, held that, under FELA, "there was enough evidence of a pattern of supervisory abuse to allow a rational jury to infer that a reasonably careful railroad management, represented . . . by the master mechanic, would have gotten wind of [the harassment at issue] and done something to stop it. No more was required to satisfy the undemanding requirements for proving negligence under the Act." *Lancaster,* 773 F.2d at 820; *see also Mullahon v. Union Pacific Railroad,* 64 F.3d 1358 (9th Cir. 1995) (holding that notice to a track gang laborer of an allegedly foreseeable shooting of a supervisor by a fellow laborer constituted notice to the railroad and therefore rendered it liable under FELA even for intentional misconduct).

In this case, the jury was presented with evidence that Martin informed Mr. Benson of the harassment. In *Mullahon v. Union Pacific Ry. Co.*, the Ninth Circuit concluded that knowledge is imputed to the railroad when an employee who was aware of the misconduct and who, by virtue of his duties or responsibilities, was in a position to take steps against the misconduct but failed to do so. *See Mullahon,* 64 F.3d at 1363-64. Benson was second in command to the master mechanic. Under the liberal FELA standard, "it is not outside the possibility of reason" that he could have ended the offensive conduct. *See Mullahan,* 64 F.3d at 1364. There was also evidence that another employee, Mr. Loughner, was aware of the harassment. Again, under FELA's liberal evidentiary standard, it is entirely possible that he, too, could have done something to stop the misconduct. Furthermore, it was

---

*See Martin v. Norfolk Southern Ry. Co.,* 926 F. Supp. 1044, 1047-51 (N.D. Ala. 1996). Accordingly, the court concludes that *Faragher* is neither controlling nor persuasive in the FELA context.

undisputed that the master mechanic, Bennett, told the plaintiff that Hornbuckle was a "strange, weird, sick individual" and that he would have to learn to work with him. This, arguably, is sufficient evidence from which the jury could have inferred that the master mechanic was aware of Hornbuckle's propensities to harass. Additionally, under the rationale of *Lancaster*, a jury could have reasonably inferred from the pervasiveness of the harassment that the master mechanic should have been aware of the activity and taken action to stop it. *Lancaster*, 773 F.2d at 820.

Because the facts and inferences fail to point overwhelmingly in favor of Norfolk Southern "such that reasonable people could not arrive at a contrary verdict," the defendant's renewed motion for judgment as a matter of law will be denied.

## IV. Motion for Mistrial.

### A. Standard for Motion for Mistrial.

A trial judge must make all reasonable efforts to reconcile an inconsistent jury verdict and "if there is a view of the case which makes the jury's answers consistent, the court must adopt that view and enter judgment accordingly." *Burger King Corp. v. Mason*, 710 F.2d 1480, 1489 (11th Cir. 1983); *Griffin v. Matherne*, 471 F.2d 911, 915 (5th Cir. 1973). The test employed in determining whether a conflict in the verdict can be reconciled is "whether the answers may fairly be said to represent a logical and probable decision on the relevant issues as submitted . . . ." *Mason*, 710 F.2d at 1489 (quoting *Griffin*, 471 F.2d at 915). However, if the jury's answers are so ambiguous or conflicting that they cannot be reconciled fairly, the trial court may not enter judgment thereon. *Royal Netherlands Steamship Co. v. Strachan Shipping Co.*, 362 F.2d 691, 694 (5th Cir. 1966), *cert. denied*, 385

U.S. 1004, 87 S. Ct. 708, 17 L. Ed. 2d 543 (1967). When an insurmountable inconsistency or ambiguity is perceived, the trial court may resubmit the issue to the jury before it is dismissed or order a new trial on some or all of the issues. *Nordmann v. National Hotel Co.*, 425 F.2d 1103, 1106 (5th Cir. 1970).

### B.  Discussion.

In support of its motion for mistrial, Norfolk Southern argues that the jury's verdicts on June 13, 1996, are inconsistent and irreconcilable. Specifically, Norfolk Southern contends that because the jury returned verdicts in favor of the individual defendants, Hornbuckle and Thomasson, on the state law claims as to compensatory damages,[8] that the jury's finding of liability against Norfolk Southern under FELA is unfounded. *See Memorandum in Support of Defendant Norfolk Southern Railway Company's Renewed Motion for Judgment as a Matter of Law, etc.* at 8-14. Any liability under FELA, Norfolk Southern argues, hinges on the threshold finding that "the individual defendants were in fact guilty of the conduct claimed by the plaintiff *and* that such conduct was *a cause of some damage to him.*" *See id.* at 12 (emphasis in original).

While recognizing the facial incongruity of the jury's verdicts, the court must do so against the backdrop of FELA, and, as stated *supra*, the court "must make all reasonable efforts to reconcile an inconsistent jury verdict . . . and enter judgment accordingly." *Mason*, 710 F.2d at 1489. Applying this standard, Norfolk Southern's motion for mistrial will be denied.

---

[8] The jury, however, did award punitive damages in favor of Martin and against the two individual defendants on the state law claims. *See supra.*

11

Consistent with its liberal threshold of liability, FELA assigns special emphasis to trial by jury:

> Beyond the fact that a statutory action under the FELA significantly differs from a common law negligence action in terms of the standard of proof, it is clear that the congressional intent in enacting the FELA was to secure jury determinations in a larger proportion of cases than would be true of ordinary common law actions. In other words, "trial by jury is part of the remedy" in FELA cases.

*Id.* at 371 (quoting *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines*, 369 U.S. 355, 360 (1962)). The Supreme Court explains that "[t]he right to trial by jury . . . is part of the remedy afforded railroad workers under the [FELA] . . . to deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief Congress had afforded them." *Bailey v. Central Vermont Ry.*, 319 U.S. 350, 354 (1943).

Accordingly, "under the FELA the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506 (1957); *see also Mullahon v. Union Pacific R.R.*, 64 F.3d 1358, 1364 (9th Cir. 1995) (noting that, "[i]n FELA cases, it is only necessary that the jury's conclusion be one which is not outside the possibility of reason on the facts and circumstances shown"); *Syverson v. Consolidated Rail Corp.*, 19 F.3d 824, 828 (2d Cir. 1994) (stating that a plaintiff's FELA claim must be decided by a jury unless "there is absolutely no reasonable basis for a jury to find for the plaintiff"); *Hines v. Consolidated Rail Corp.*, 926 F.2d 262, 268 (3rd Cir. 1991) (stating that, in a FELA action, "a trial court is justified in withdrawing . . . issue[s] from the jury's consideration only in those extremely

rare instances where there is a zero probability either of employer negligence or that any sch negligence contributed to the injury of the employee"); *Lockhard v. Missouri Pacific Ry. Co.*, 894 F.2d 299, 303 (8th Cir. 1990) (stating that, in a FELA jury trial, "[a] jury's verdict should not be overturned unless there is no basis for finding that the employer's negligence played a part in the employee's injury"); *Smith v. National R.R. Passenger Corp.*, 856 F.2d 467, 469 (2nd Cir. 1988) (holding that, "[i]n a case arising under the FELA, a court may set aside a jury verdict . . . 'only when there is a complete absence of probative facts to support the conclusion reached' by the jury") (quoting *Lavender v. Kurn*, 327 U.S. 645, 653 (1946)).

Norfolk Southern argues that, in any event, the jury's verdict in favor of the individual defendants on Martin's state law claims of assault and battery and invasion of privacy, and the jury's verdict against Norfolk Southern under FELA are inconsistent with one another and that, as such, its motion for mistrial should be granted. *See Defendant Norfolk Southern Railway Company's Reply to Plaintiff's Brief in Opposition to Pending Motions* at 7-10. Norfolk Southern contends that any finding of liability against Norfolk Southern necessarily required a jury finding of liability as to the individual defendants. *See id.* at 8-9. Moreover, Norfolk Southern submits that it "could hardly be liable to the plaintiff for 'negligent supervision' of two of its employees *when the underlying misconduct of those employees did not cause the plaintiff any damage.*" *Id.* at 9 (emphasis in original).

It is certainly true that the jury did not find the individual defendants liable for compensatory damages under the tort theories of assault and battery and invasion of privacy. However, the court finds unpersuasive the notion that to hold an employer liable

13

under FELA, the individual tortfeasors must also be held personally liable under separate and distinct, state tort law causes of action. Assuming arguendo that, in the present case, Martin decided *not* to sue the individual defendants for the state tort claims and, as in the present action, a jury found in favor of Martin under FELA. Could it then be argued that the verdict could not be upheld? It could not. FELA, unlike common law tort vehicles, requires proof of only "slight negligence," a burden of proof that "obviously, is much less than the burden required to sustain recovery in ordinary negligence actions." *Shipman*, 411 F.2d at 371. Moreover, the parties have presented to the court — and the court has found — no reported FELA decision where a plaintiff, in order to prevail on the FELA claim, was required also to prevail on separate state law claims against the employer's actors. Such a requirement, moreover, would unnecessarily trammel the clear, congressional purpose undergirding the enactment of FELA, which was "to secure jury determinations in a larger proportion of cases than would be true of ordinary common law actions." *Shipman*, 411 F.2d at 370.

Based upon the foregoing, and in keeping with FELA's unequivocal purpose, the court holds that the different damage awards among the various defendants are not fatally inconsistent with one another. Accordingly, Norfolk Southern's motion for mistrial will be denied.

**V.     Conclusion.**

The defendant's renewed motion for judgment as a matter of law, or, in the alternative, motion for partial judgment as a matter of law on plaintiff's claim of economic damages, will be denied. The defendant's motion for mistrial will also be denied. By

separate order, the court will enter judgment in favor of Martin and against Norfolk Southern in the amount of $500,000.00, less $125,000.00, based upon the jury's finding that Martin was 25% negligent. Entry of this final judgment will conclude this litigation.

Done, this **30th** of September, 1997.

_____
EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE